761 So.2d 760 (2000)
Annie R. GRAY
v.
The STATE of Louisiana Through the DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT and Department of Public Works (Sewerage).
No. 00-CA-7.
Court of Appeal of Louisiana, Fifth Circuit.
May 17, 2000.
Rehearing Denied July 10, 2000.
*762 Richard P. Ieyoub, Attorney General, J. Elliott Baker, Assistant Attorney General, New Orleans, Louisiana, Attorneys for Appellant State of Louisiana Through the Department of Transportation and Development.
Ford T. Hardy, Jr., Howard, Laudumiey, Mann, Reed & Hardy, New Orleans, Louisiana, Attorney for Appellee Annie R. Gray.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., JAMES L. CANNELLA and SUSAN M. CHEHARDY.
CANNELLA, Judge.
Defendant, State of Louisiana, through the Department of Transportation and Development (DOTD) appeals from the trial court judgment in favor of Plaintiff, Annie Gray, finding DOTD 100% at fault for the damages which Plaintiff sustained when she tripped and fell over a catch basin. For the reasons which follow, we reverse the judgment.
On March 2, 1993, Plaintiff walked across the Westbank Expressway in Jefferson Parish. She was leaving her doctor's office and wanted to take the bus to a friend's house. In crossing the street, rather than walking to the corner and crossing in the crosswalk, Plaintiff cut diagonally across the street to shorten her route. She had seen the bus coming and wanted to make sure that she was across the street in time to catch it. As she approached the other side of the street, she walked directly onto and in front of a street drain or catch basin. The drain had a galvanized steel grate embedded in the street, which measured approximately 40 inches by 40 inches. The grate was located in front of an opening in the curb that came up vertically, measuring approximately 3 and 3/8 inches high by 40 inches long, comprising the catch basin. She contends that her foot slipped on the grating and slid into the opening in the drain, whereupon she broke her knee. Plaintiff underwent medical treatment for her injury.
On February 17, 1994, Plaintiff filed suit against the DOTD and the Parish of Jefferson, through the Department of Public Works (Sewerage). On October 31, 1994, Plaintiff supplemented her petition to add as a defendant the City of Westwego (Westwego). The matter went to trial against DOTD only because all other Defendants were dismissed with prejudice. On April 28, 1999, the trial court entered judgment in the amount of $30,000 general damages and $14,939.66 medical expenses, plus legal interest from the date of judicial demand, against "The State of Louisiana, Department of Transportation and Development and Department of Public Works (Sewerage)," finding it 100% at fault. It is from this judgment that DOTD appeals.
On appeal DOTD argues that the trial court erred in finding it 100% at fault in the cause of Plaintiff's injuries. DOTD argues that it did nothing wrong and that the injuries which Plaintiff sustained were solely the result of her own fault, by walking across the middle of the street instead of crossing at the crosswalk, or the combined fault of herself and the bus company. Finally, DOTD points out and Plaintiff argues that the judgment is in error in naming the "Department of Public Works *763 (Sewerage)" in it because that party was dismissed before trial.
Plaintiff disagrees with DOTD's fault arguments. Plaintiff contends that the bus stop was located at that corner prior to DOTD's installation of the catch basin at that location and it should have been anticipated that one would walk in the area of the catch basin to get to the bus or to get on and off of the bus. Thus, the catch basin at that location in relation to the bus stop posed an unreasonable risk to the public, which DOTD was aware of and did not timely correct. Plaintiff concedes that the judgment is in error in including the Department of Public Works (Sewerage) and that reference to that former Defendant should be deleted from the judgement.
Plaintiff's action against DOTD rests in both negligence, under La. C.C. art. 2315, and strict liability, under La. C.C. art. 2317. In Lee v. State, Through Department of Transportation and Development, 97-0350 at p. 3 (La.10/21/97), 701 So.2d 676 at 677, the Supreme Court set forth the law as to DOTD's liability for highway related accidents as follows:
In situations such as this, Louisiana law provides two theories under which DOTD may be held liable for damages: negligence, based on La. Civ.Code art. 2315, and strict liability, based on La. Civ.Code art. 2317. Traditionally, these theories could be distinguished because, under strict liability, a plaintiff was relieved of proving that the owner or custodian of a thing which caused damage knew or should have known of the risk involved. Campbell v. Dept. of Transp. and Dev., 94-1052, p. 5 (La.1/17/95), 648 So.2d 898, 901. La. R.S. 9:2800 eviscerates this distinction in claims against public entities, however, by requiring proof of actual or constructive notice of the defect which causes damage. Thus, the burden of proof is now the same under either theory. The plaintiff must establish that the thing which caused the damage was in the custody of the defendant, that the thing was defective because it had a condition which created an unreasonable risk of harm, that defendant had actual or constructive notice of the defect and failed to take corrective measures within a reasonable time, and that the defect was a cause in fact of plaintiff's injuries. Bessard v. State, Dept. of Transp. and Dev., 94-0589, p. 3 (La.11/30/94), 645 So.2d 1134, 1136; Oster v. Dept. of Transp. and Dev., 582 So.2d 1285, 1288 (La.1991).
The owner or person having custody of immovable property has a duty to keep such property in a reasonably safe condition. This duty is the same under both the strict liability theory of La. C.C. art. 2317 and the negligence liability theory of La. C.C. art. 2315. McAllister v. Coats, 96-1069, p. 7 (La.App. 1st Cir. 3/27/97), 691 So.2d 305, 309, writ denied, 97-1356 (La.9/5/97), 700 So.2d 513.
Under both theories, the absence of an unreasonably dangerous condition of the thing implies the absence of a duty on the part of the defendant. Oster v. Department of Transportation and Development, State of Louisiana, 582 So.2d 1285, 1288 (La.1991). A determination of whether a thing presents an unreasonable risk of harm involves numerous considerations and cannot be applied mechanically. Id. In addition to balancing the likelihood and magnitude of harm against the utility of the thing, the trier of fact should consider a broad range of social, economic, and moral factors including the cost to defendant of avoiding the risk and the social utility of plaintiff's conduct at the time of the accident. Id. at 1289.
In a trip and fall case, the duty is not solely with the landowner. A pedestrian has a duty to see that which should be seen and is bound to observe his course to see if his pathway is clear. Carr v. City of Covington, 477 So.2d 1202, 1204 (La.App. 1 st Cir.1985), writ denied, 481 So.2d 631 (1986). The degree to which a danger may be observed by a potential victim is one *764 factor in the determination of whether the condition is unreasonably dangerous. Wallace v. Slidell Memorial Hospital, 509 So.2d 69, 72 (La.App. 1st Cir.1987). A landowner is not liable for an injury which results from a condition which should have been observed by the individual in the exercise of reasonable care or which was as obvious to a visitor as it was to the landowner. Barnes v. New Hampshire Insurance Company, 573 So.2d 628, 630 (La.App. 2nd Cir.1991).
The number of accidents caused by the alleged defective condition is a factor to consider in determining whether a risk of harm is unreasonable. Buchert v. State, Department of Recreation and Tourism, Office of Tourism, 95-0924, p. 4 (La.App. 4th Cir. 1/31/96), 669 So.2d 527, 529, writ denied, 96-0534 (La.4/8/96), 671 So.2d 341.
In this case the trial court, in its reasons for judgment, concluded that Plaintiff had met her burden of proof in establishing DOTD's fault for the injuries which she sustained. The trial court found that DOTD had custody or control of the street drain. This was not disputed by DOTD. DOTD installed the drain during the renovation of the Westbank Expressway in 1983 to 1984. The trial court further concluded that the drain created an unreasonable risk of harm to Plaintiff because it did not have a grate over the vertical face of the drain and because it was placed in the vicinity of a bus stop where people would have to step onto the drain to enter or exit the bus. The trial court also found that DOTD had notice of the defect and failed to timely correct it because the bus stop had been located at the intersection for several years before the drain was put into place. And finally, the trial court concluded that because Plaintiff crossed diagonally, rather than going to the corner and crossing at the cross walk, did not lessen DOTD's liability for her injuries.
The standard of review in cases where unreasonable risk of harm is at issue is manifest error. Reed v. Wal-Mart Stores, Inc., 97-1174 (La.3/4/98); 708 So.2d 362. It is well settled that, on appellate review of a factual determination, the reviewing court may not set aside the factfinder's findings of fact in the absence of manifest error or unless they are clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring, 283 So.2d 716 (La.1973). The appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one after reviewing the record in its entirety. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993).
Upon review, we find that the conclusions reached by the trial court in this case were not reasonable, that is, they were clearly wrong in several respects.
First, there is simply no showing in the record that the drain had a vice or defect or posed an unreasonable risk of harm to Plaintiff.
The primary defect found by the trial court and argued by Plaintiff, in finding DOTD liable for Plaintiff's injuries, was its placement of the drain at or near the bus stop sign. However, the error in this reasoning is that DOTD did not have control over where the bus stop sign was placed, and the bus stop sign was placed by the bus company near the drain following the completion of the renovation work. While there was testimony that there had been a bus stop in the area of the intersection prior to the work being done by DOTD, there was further testimony that the bus stop sign was placed at its location at the time of this accident after the renovation work was completed by DOTD, when the drain was in place 21 feet from the corner. The record establishes that any decisions about the placement of the bus stop sign and the location where the bus would actually stop were made by the bus company and were not within the control of DOTD. There was also testimony that, despite the location of the bus stop sign closer to the drain, the bus actually stopped further *765 away from the drain, at the corner, in the crosswalk to allow the passengers to enter and exit at the flattened handicapped section of the curb. Thus, DOTD cannot be held responsible for the location of the drain near the bus stop when the bus stop sign was positioned by the bus company after DOTD completed its work and DOTD did not control where the sign was placed.
The project engineer for the renovation work, Richard Rood (Rood), testified that the drains are placed 200 feet apart along the roadway for optimum drainage. This drain was placed 21 feet from the crosswalk, an ample distance to avoid pedestrian traffic at the corner. Rood testified that the drain was within industry standards and was designed to take water off the roadway quickly to prevent ponding and hydroplaning on the roadway. The defense also presented expert testimony by Fred Liebkemann (Liebkemann) who stated that he knew of no standards indicating defects in this drain. To the contrary, he testified that the grate and the vertical hole were the appropriate size for their intended purpose and, in fact, the vertical hole was actually smaller than those in most other drains throughout the area. Further, he testified that the material used for the grate was non-skid galvanized steel, used in the industry in situations where slippery surfaces are likely, like oil rig flooring.
While the trial court stated that the drain would have been safer if it had had a vertical grating over the front face, there was no evidence presented to prove that the absence of such grating was an inherent defect. To the contrary, both Rood and Liebkemann testified that there had to be large openings in street drains to allow large debris items to flow into the drain and prevent blockage.
Finally, we note that the parties stipulated that Frank Oser, the maintenance supervisor for DOTD in charge of the area of the accident, would have testified that he has not received any complaints of falls at that drain.
Based on the foregoing and considering the utility of the drain against the likelihood of harm, we find that the trial court was clearly wrong in finding that the drain, or the placement of the drain, created an unreasonable risk of injury to the Plaintiff. Absent a finding of a condition of the drain that posed an unreasonable risk of harm, there can be no finding of liability on the part of DOTD.
Additionally, we find manifest error in the trial court conclusion that Plaintiff's own actions did not contribute to the cause of her injuries.
A pedestrian has a duty to see that which should be seen and is bound to observe his course in order to determine whether his path is clear. Williams v. Orleans Parish School Board, 541 So.2d 228 (La.App. 4th Cir.1989).
The trial court held that Plaintiff was not at fault by jay-walking because the dangerous condition created by the placement of the drain existed for all who entered or exited a bus at that location. The trial court's error in this regard lies in failing to consider that this Plaintiff did not fall while entering or exiting the bus and in failing to consider, as stated above, that DOTD did not have control over the bus stop location or where the bus actually stopped to allow passengers on and off. The fact that bus passengers may be placed in a precarious position if the bus stopped over the drain was not relevant to the facts of this case and does not create liability against DOTD. This Plaintiff slipped and fell while crossing the roadway by walking diagonally across it and right into the drain, instead of crossing at the crosswalk some 21 feet from the drain. Both Rood and Liebkemann testified that the drain was clearly visible and within appropriate standards, despite the testimony by Plaintiffs expert, Wilfred Gallordo, that the drain would have been more visible with marking paint. It appears that *766 Plaintiff's attention to the approaching bus may have diverted her attention from where she was walking.
Accordingly, for the reasons set forth above, we find that the trial court was clearly wrong in finding DOTD at fault for Plaintiffs injuries and reverse the judgment rendered against "The State of Louisiana, Department of Transportation and Development [DOTD] and Department of Public Works (Sewerage)," dismissing Plaintiffs case with prejudice and at Plaintiff's costs.
REVERSED.