802 So.2d 746 (2001)
Augustine R. CALCAGNO
v.
KUEBEL, FUCHS PARTNERSHIP, Charity Bingo of Jefferson, Inc., d/b/a Elmwood Room, Harahan River Ridge Carnival Club, Inc., d/b/a Krewe of Centurions, and Scottsdale Insurance Company.
No. 01-CA-691.
Court of Appeal of Louisiana, Fifth Circuit.
November 14, 2001.
*747 Raymond A. Pelleteri, Jr., Claudette L. Bienvenu, Pelleteri, Wiedorn & Brouillette, New Orleans, LA, Attorneys for Defendants/Appellants (Kuebel-Fuchs Partnership, Charity Bingo of Jefferson, Inc., d/b/a Elmwood Room).
Terrence J. Lestelle, Andrea S. Lestelle, Philip R. Adams, Jr., Lestelle and Lestelle, Metairie, LA, Attorneys for Plaintiff/Appellee (Augustine R. Calcagno).
Panel composed of Judges SOL GOTHARD, SUSAN M. CHEHARDY, and WALTER J. ROTHSCHILD.
SOL GOTHARD, Judge.
Plaintiff, Augustine R. Calcagno, filed suit for injuries received after she fell out-side of the entrance to the Elmwood Room. After trial on the merits, the court rendered judgment in favor of plaintiff and against defendants, Kuebel, Fuchs Partnership and Charity Bingo of Jefferson, Inc., owners of the building and their insurer, United Fire and Casualty Co., awarding to plaintiff $30,000.00 in general damages, $3,234.24 in past medical expenses, and costs of $3,127.05. Defendants have appealed from that judgment. For the following reasons, we affirm the judgment of the trial court.

FACTS
On May 9, 1999, at approximately 6:30 p.m., Ms. Calcagno, along with her friends Victor D'Arcangelo and Virginia Lee, arrived at the Elmwood Room to play bingo. It was still light outside and the weather was fair. Ms. Calcagno was 91 years old at that time. Ms. Calcagno tripped on the curb in front of the entrance to the bingo hall, and fell to her knees. Ms. Lee testified that immediately after the fall, Ms. Calcagno was very pale and nervous, and she appeared to be in pain. Ms. Lee and Mr. D'Arcangelo brought Ms. Calcagno to East Jefferson General Hospital, where she was diagnosed as having fractured her right tibia.
Both Ms. Lee and Mr. D'Arcangelo stated that they and plaintiff went to play bingo four to five times a week, and they *748 always entered through the same door. There is a sidewalk, and a curb, outside of the front doors, running along the building. There is also a ramp to the left, in front of a set of exit doors, that cannot be opened from the outside of the building. Ms. Calcagno stated in her deposition that she missed the step up to the curb and fell forward, toward the entrance doors.
Wilfred Gallardo, an accident cause analyst, qualified as an expert in the field of safety. On November 9, 2000, he inspected the area outside of the Elmwood Room. More specifically he inspected the front of the bingo hall, and the area on both sides, especially the walkway areas and the areas of ingress and egress. He also looked at pictures taken at the time of the accident. The sidewalk running in front of the bingo hall had a 3-¼ inch curb to the parking lot. Prior to the accident, the fire lane area in front of the entrance, including the curb, was painted red. At the time of the accident, the paint had oxidized into a pinkish, gray color. This, Mr. Gallardo opined, created a tripping hazard because it created an optical illusion which disguised the change in elevation. He further testified that the owner should have recognized the hazard and either painted the curb or placed signs warning of the change in elevation. Alternatively, there could have been a cut-in ramp in front of the entrance. He stated that had safety standards such as those he mentioned been utilized, this accident would not have occurred. Mr. Gallardo noted that subsequent to the accident, there were some attempts to repaint; the curb in front of the bingo hall was repainted, but not the entire curb. Both Mr. D'Arcangelo and Ms. Calcagno stated that the curb on the date of the accident was a pinkish, gray color, and that it had been painted bright red after the accident occurred.
Victor Breaux took measurements at the Elmwood Room shortly after the accident. From the passenger front door where Mr. D'Arcangelo parked his car to the front entrance was 74 feet 5 inches. From the car door to the ramp was 78 feet 8 inches. It was 30 feet from the ramp to the front exit. Utilizing the ramp to get to the front door would have spanned 108 feet 8 inches. Mr. Gallardo was asked about the ramp located 30 feet from the entrance, and he stated that in his opinion that ramp was defective, also posed a tripping hazard, and was too far from the entrance.
Bhola Dhume, a licensed architect and the chief building officer for the Parish of Orleans, was qualified as an expert in building codes, permits and building design. He examined the Elmwood Room site and found no code violations. He testified that there were no codal requirements that the curb be painted. Both he and part owner Kenneth Keubel testified that there were color variations between the curb and the street that were not evident in the photographs.
Mr. Kenneth Keubel (a partner in Keubel Fuchs, LLC, owner of the Elmwood Room) testified that the bingo hall was renovated in 1990. There was an estimated 7500 people who attempted bingo games each week, and the typical age of players is 40 to 60 years old, with some older or younger. There had been no other reports of injury as a result of tripping or falling over the curb. Mr. Keubel stated that he had the building painted in August of 1999, and the painter painted part of the curb without his request or permission.
As a result of the accident, Ms. Calcagno was diagnosed as having a fractured right tibia, which was immobilized by means of a splint or brace. She was confined to a wheelchair for six weeks. Thereafter, she *749 would use a walker and cane to move about.
Maria Dell Calcagno, plaintiff's niece, testified that she has resided with the plaintiff for over fifty years. She testified that, prior to the accident, her aunt was mentally very "sharp" and that she was very active and "could get around like a 20 year old." Shortly after the accident she noticed that plaintiff was "mentally slipping," and this condition got progressively worse. At the time of trial, Ms. Calcagno's memory was worse, her temper was worse and she suffered from paranoia. Prior to the accident, plaintiff was independent and utilized no ambulatory devices, now she uses a walker or a cane and has to have someone with her because of the forgetfulness. Both Mr. D'Arcangelo and Ms. Lee testified that they had been friends with Ms. Calcagno for many years prior to the accident. Prior to the accident, she was always in good health and did not need assistance to move around. Prior to the accident she was mentally sharp; after the accident she was not good with details.
Ms. Calcagno still continues to play bingo 4 to 5 times a week, and she still plays card games while waiting for the bingo games to start.
Dr. R. Hugh Fleming, a neurologist, first saw Ms. Calcagno on September 8, 1999, on referral from her internist, for memory loss. He testified that he performed some tests which showed age-related changes from circulation and atrophy of the brain. He stated that the leg trauma suffered by Ms. Calcagno would not have, on its own, caused her memory problem. In his opinion, the memory problems were associated with the aging process, and these problems were more obvious since, or were precipitated by, the May accident. The accident could have aggravated her mental condition, short term memory loss, which could have been asymptomatic until triggered by the accident, and a head trauma did not have to be present in order for plaintiff's symptoms to aggravate. Dr. Fleming opined that, with Ms. Calcagno's history, it was highly probable that Ms. Calcagno's symptoms were triggered by the accident.

ANALYSIS
On appeal, defendant alleges that the trial court erred in determining that the curb was defective or, that if it was defective, that the owner knew or should have known of the defect. Defendant further argues that the trial court erred in finding that there should have been a ramp in front of the entrance door.
The owner or person having custody of immovable property has a duty to keep such property in a reasonably safe condition. This duty is the same under both the strict liability theory of La. C.C. art. 2317 and the negligence liability theory of La. C.C. art. 2315. Gray v. DOTD, 00-7 (La. 5 Cir. 5/17/00), 761 So.2d 760, writ denied, 00-2369 (La.11/03/00), 773 So.2d 146. Under both theories, the absence of an unreasonably dangerous condition of the thing implies an absence of a duty on the part of the defendant. Id.
In our review of this issue of whether an unreasonable risk of harm was present, we are guided by our Louisiana Supreme Court:
Because a determination that a defect presents an unreasonable risk of harm predominantly encompasses an abundance of factual findings, which differ greatly from case to case, followed by an application of those facts to a less-than-scientific standard, a reviewing court is in no better position to make the determination than the jury or trial court. Consequently, the findings of the jury or *750 trial court should be afforded deference and we therefore hold that the ultimate determination of unreasonable risk of harm is subject to review under the manifest error standard. A reviewing court may only disturb the lower court's holding upon a finding that the trier of fact was clearly wrong or manifestly erroneous. Stobart v. State, 617 So.2d 880 (La.1993).
In determining whether a defect presents an unreasonable risk of harm, the trier of fact must balance the gravity and risk of harm against the individual and societal rights and obligations, the social utility, and the cost and feasibility of repair. Boyle, 685 So.2d at 1083; Entrevia v. Hood, 427 So.2d 1146, 1149 (La.1983); Langlois v. Allied Chemical Corp., 258 La. 1067, 249 So.2d 133 (La. 1971). Simply put: The trier of fact must decide whether the social value and utility of the hazard outweigh, and thus justify, its potential harm to others? W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS §§ 31 (5th ed.1984). The reviewing court must then evaluate the fact finder's determination under the manifest error standard of review.
Reed v. Wal-Mart Stores, Inc., 97-1174 (La.3/4/98), 708 So.2d 362, 364-365. In this case, the trial court considered the evidence presented and found that:
It is the opinion of this court that the curb as it appeared on the day of the accident was defective due to the "optical illusion" effect created by the light pink coloring on the face of the curb which caused it to blend in with the surrounding concrete. As a result of this condition, the curb created an unreasonable risk of harm to those who traversed it which could have easily been remedied by the defendants through the placement of warning signs or insuring that the curb remained painted in a bright, noticeable color. Due to the defendants failure to remedy this risk of harm, they are liable for the plaintiff's injuries.
Our review of the record fails to reveal any manifest error in this determination. Defendants also argue that the duty owed by defendants to Ms. Calcagno was lessened because she was familiar with the curb, since she had gone to the Elmwood Room almost nightly for the past five years. However, the evidence indicates that the curb was not always in the condition that it had been when Ms. Calcagno tripped. Two years prior to the accident it was painted bright red, and over the course of time the paint oxidized to the color apparent at the time of the accident. This created the an "optical illusion."
Defendants argue that no other reported accidents have occurred involving the curb in question, and therefore the curb was not unreasonably dangerous. Gray v. DOTD, supra. However, the absence of other reported incidents is only one factor to be considered. In this case, the lack of other reported incidents is insufficient to negate the duty owed by defendants to the elderly patrons who frequent the Elmwood Room.
Defendants argue that the trial court erred in failing to find that they had no knowledge of the defect prior to the accident. However, Mr. Keubel testified that he went to the Elmwood Room once a month. The curb had been painted bright red two years prior to the accident, and had faded to the light pinkish, gray color that it was at the time of the accident. The area had been painted shortly after the accident, by a worker hired by Mr. Kuebel. We cannot find manifest error in a finding that defendants knew or should have known of the defective curb.
*751 Finally, defendants argue that the curb was not defective because it did not violate any building code requirements. Again, compliance with building codes is only one factor to be considered in determining liability. Turner v. Pointe Coupee Parish School Board, et al., 577 So.2d 755 (La.App. 1st Cir.1991), writ denied, 580 So.2d 673 (La.1991).
This case involves a business who caters to elderly patrons, and who has a duty to insure safe ingress to those patrons. Balanced against this duty is the minimal cost to defendants to repaint the curb or to place signs warning of the step up. We find that the trial court correctly concluded that the faded curb created an unreasonable risk of harm to the plaintiff. Compare, Sistler v. Liberty Mutual Insurance Co., 558 So.2d 1106 (La.1990). Defendants allege that the trial court erred in finding that there should have been a ramp in front of the entrance. The trial court's reasons for judgment fail to reflect that such a finding was made.
Defendants further argue that the trial court erred in failing to assess any liability to the plaintiff in this accident. However, the appellate court may only reallocate fault if it finds the trial court was clearly wrong or manifestly erroneous in its allocation of fault, even if the Court of Appeal would have decided differently had it been the original trier of fact. Clement v. Frey, 95-1119, 95-1163 (La.1/16/96), 666 So.2d 607; Hebert v. Brown Bottling Group, 98-0924 (La.10/30/98), 719 So.2d 1043.
The evidence established that, while Ms. Calcagno knew there was a curb in the area, the faded paint created an optical illusion, making it difficult to see exactly where the curb was. Accordingly, we cannot say that the trial court erred in assessing no fault to Ms. Calcagno.
Defendants lastly challenge the award for damages as excessive.[1]
In LaSalle v. Benson Car Co., 00-1459 (La.App. 5 Cir. 1/30/01), 783 So.2d 404, 409, we again noted that the award of damages is within the discretion of the trial court:
The standard for reviewing the award of damages is that of abuse of discretion. Reck v. Stevens, 373 So.2d 498, 501 (La. 1979). This court must determine, after an articulated analysis of the facts, whether the trial court abused its great discretion. Bostwick v. M.A.P.P. Industries, Inc., 97-791 (La.App. 5 Cir. 12/30/97), 707 So.2d 441. In reviewing the issue of whether the trier of fact abused its discretion in making an excessive award, this court must determine whether the award can be supported under the interpretation of the evidence most favorable to the plaintiff which reasonably could have been made by the fact finder. Straughter v. Ellebnawi, 99-1012 (La.App. 5 Cir. 3/22/00), 759 So.2d 874. The reviewing court must look first, not to prior awards, but to the individual circumstances of the case before it, and only after an analysis of the facts and circumstances peculiar to the case before it and the individual involved therein may the reviewing court determine the appropriateness of the award. Young v. Louisiana Medical Mut. Ins. Co., 98-522 (La.App. 5 Cir. 12/16/98), 725 So.2d 539. The discretion of the trial court in damage awards is "great", even "vast" and should rarely be overturned by the [Pg. 10] appellate court. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. *752 denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
Defendants argue that the award of $30,000.00 was excessive in a case where the plaintiff failed to prove that her memory loss was caused by the accident, and thus the only injury was a fractured tibia. Defendants allege that plaintiff's memory loss was a result of her age, 91 at the time of the accident, and not the accident itself.
A plaintiff in a personal injury lawsuit must prove causation by a preponderance of the evidence. Dabog v. Deris, 625 So.2d 492 (La.1993). The plaintiff is aided in this endeavor by the legal presumption that a medical condition producing a disability resulted from a preceding accident if: 1) the injured person was in good health prior to the accident; 2) the disabling condition manifested itself shortly after the accident; and, 3) medical evidence indicates that there is a reasonable possibility of a causal connection between the accident and the disabling condition. Id at 494, citing Housley v. Cerise, 579 So.2d 973, 980 (La.1991).
The only doctor to testify was Ms. Calcagno's treating physician, who stated that her memory problems were caused by age related changes in the brain, which were asymptomatic prior to the accident, and which became symptomatic as a result of the accident. There was no evidence presented to contradict this testimony. Plaintiffs niece, with whom she resides, and her friends, who saw her almost daily, testified that she was mentally "sharp" prior to the accident.
In addition we note that the leg injury suffered by plaintiff caused a once independent and mobile woman to become dependent on ambulatory devices. Given the facts of this particular case, and the injuries suffered by Ms. Calcagno, we find no manifest error in the trial court's award of damages in this matter.
Accordingly, the decision of the trial court is affirmed. All costs are assessed against appellants.
AFFIRMED.
NOTES
[1] Prior to trial, plaintiff and defendants stipulated that the claim for damages did not exceed $50,000.00 exclusive of interest and costs.