FRANK TROMATORE, INDIVIDUALLY AND
ON BEHALF OF HIS DECEASED WIFE
MARY TROMATORE, AND
CHRIS TROMATORE

VERSUS

JEFFERSON PARISH HOSPITAL SERVICES
DISTRICT NO. 2 D/B/A EAST JEFFERSON
GENERAL HOSPITAL AND
XYZ INSURANCE COMPANY

NO. 21-CA-551

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 787-997, DIVISION "K"
HONORABLE ELLEN SHIRER KOVACH, JUDGE PRESIDING

May 26, 2022

**HANS J. LILJEBERG**
**JUDGE**

Panel composed of Judges Jude G. Gravois,
Stephen J. Windhorst, and Hans J. Liljeberg

<u>**AFFIRMED**</u>

    **HJL**
    **JGG**
    **SJW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
FRANK TROMATORE, INDIVIDUALLY AND ON BEHALF OF HIS
DECEASED WIFE MARY TROMATORE, AND CHRIS TROMATORE
        Matthew A. Mang
        Victoria H. Fabre

COUNSEL FOR DEFENDANT/APPELLANT,
JEFFERSON PARISH HOSPITAL SERVICE DISTRICT NO. 2, D/B/A EAST
JEFFERSON GENERAL HOSPITAL
        Matthew A. Sherman
        Walter R. Woodruff, Jr.
        Clark G. Warden
        Nicholas R. Varisco

**LILJEBERG, J.**

This is an appeal taken from a judgment entered in a trip-and-fall suit. Plaintiff, Frank Tromatore, tripped on a four-inch high concrete base of a light pole located on the far side of a walkway leading from the emergency room at East Jefferson General Hospital to the street. Following a bench trial, the trial court entered judgment on May 19, 2021, in favor of plaintiff, Frank Tromatore, and against defendants, Jefferson Parish Hospital Services District No. 2 d/b/a East Jefferson General Hospital ("EJGH") and LAMMICO Risk Retention Group, Inc. ("LAMMICO"), in the amount of $200,000.00 in general damages and $73,021.43 in special damages. The trial court also awarded damages for loss of consortium to Frank Tromatore on behalf of his deceased wife, Mary Tromatore, in the amount of $5,000.00. Finally, the trial court entered judgment in favor of defendants and against plaintiff, Chris Tromatore, on his claim for bystander damages under La. C.C. art. 2315.6 for witnessing his father's fall.[1]

On appeal, EJGH contends that the trial court erred 1) by finding the concrete base was unreasonably dangerous and failing to find that it was an open and obvious condition; 2) by finding EJGH had adequate notice of the condition; and 3) by failing to assign a percentage of comparative fault to Frank Tromatore. Plaintiffs filed an answer to the appeal arguing that the trial court's awards for general damages, as well as loss of consortium, were too low. Chris Tromatore also contends in the answer to the appeal that the trial court erred by failing to award him bystander damages under La. C.C. art. 2315.6. For reasons explained more fully below, we affirm the trial court's judgment on all grounds.

---

[1] On August 16, 2021, the trial court subsequently granted LAMMICO's motion for new trial and amended the May 19, 2021 judgment to also dismiss Frank Tromatore's claims against LAMMICO, with prejudice, because the parties agreed that LAMMICO is not liable for awards that do not exceed EJGH's $500,000 self-insured retention.

**FACTS AND PROCEDURAL HISTORY**

On October 1, 2017, between approximately 5:00 p.m. and 6:00 p.m., Frank Tromatore tripped and fell over the concrete base of a light pole as he was exiting the EJGH emergency room. The walkway where Frank Tromatore fell is 280 feet long from the door of the emergency room to the street and approximately nine feet wide. It is located between a fence and a ramp that vehicles use to drive up to the emergency room. The entire walkway between the wall and ramp is concrete. A 20-foot light pole is located on the far right side of the walkway approximately 120 feet from the emergency room door. The base of the light pole is also concrete. It is located five inches from the ramp and is 18 inches wide. The base extends several inches further into the walkway than the light pole. The photographs introduced into evidence by both plaintiffs and EJGH indicate that the concrete surrounding the base, as well as the base itself, were darker than the concrete in the center part of the walkway. Plaintiffs' civil and structural engineering expert, Donald A. Barnes, testified that the base and surrounding concrete were darker because they were covered in dirt and black mold.

Mr. Tromatore testified that at the time he fell, it was still sunny outside, but the sun was going down casting shadows from the ramp and the light pole onto the walkway. Frank and his adult son, Chris Tromatore, had spent the day visiting Mary Tromatore, who was receiving medical treatment in the intensive care unit.[2] As they neared the area where the light pole was located, a couple was coming up the walkway heading to the emergency room. Frank Tromatore testified that he saw the light pole, but he did not see the base. He further testified that his right foot made contact with the base and he fell and sustained a three-part proximal humerus fracture to his shoulder. The injury required an open reduction internal fixation surgery.

---

[2] Mary Tromatore was Frank's wife and Chris' mother.

Plaintiffs' expert, Mr. Barnes, and EJGH's expert in design and architecture, E.W. Tregre II, both agreed that the walkway met all applicable building and safety codes. Mr. Tregre testified that the width of the walkway exceeds the minimum code requirements and provided ample space for pedestrian travel. As a result, he opined that the base was not a trip hazard because it did not violate any code requirements. Mr. Barnes testified, on the hand, that the base was located within the walkway because the entire area between the ramp and fence was concrete and therefore, invited pedestrians to walk where the base was located. He further opined that because the base and surrounding concrete were both the same dark color and hard to see, the base presented an unreasonably dangerous condition because it was not painted a distinguishing color.

Clarence Millet, the Senior Director of Facilities Management at EJGH, testified that approximately 2,500 to 3,000 pedestrians a month traverse the walkway to enter and exit the emergency room. He also testified that the light pole and base were installed approximately 45 years ago and EJGH had not received a single complaint or notice of a prior incident involving the light pole or its base during that time until plaintiffs filed this lawsuit. On cross-examination, Mr. Millet agreed that it was difficult to distinguish the base from the walkway in the pictures entered into evidence. He also recognized that EJGH used yellow paint to warn of other potential trip hazards in the walkway located closer to the emergency room exit.

Following the bench trial, the trial court found that the base was unreasonably dangerous and not open and obvious, noting in particular that both the base and surrounding walkway were covered in dirt and black mold, making the base virtually indistinguishable from the surrounding walkway. The trial court also found that EJGH had constructive notice of the unreasonably dangerous condition. The trial court awarded Frank Tromatore $200,000.00 in general

damages, $73,021.43 for past medicals and $5,000.00 for his late wife's loss of consortium. The trial court further entered judgment in favor of defendants and against plaintiff, Chris Tromatore, denying his claim for bystander damages under La. C.C. art. 2315.6.

EJGH filed a timely suspensive appeal, and plaintiffs responded with a timely answer to the appeal.

## LAW AND DISCUSSION

In order to prove a public entity is liable for damages caused by a thing, the plaintiff must establish: (1) custody or ownership of the defective thing by the public entity; (2) that the defect created an unreasonable risk of harm; (3) the public entity had actual or constructive notice of the defect; (4) the public entity failed to take corrective action within a reasonable time; and (5) causation. *See* La. R.S. 9:2800; La. C.C. art. 2317; *Hallal v. Eversmeyer*, 20-263 (La. App. 5 Cir. 12/23/20), 309 So.3d 863, 867, *writ denied*, 21-103 (La. 3/9/21), 312 So.3d 584.

A court of appeal may not set aside a trial court's factual findings absent manifest error, or unless those findings are clearly wrong. *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989). To reverse under the manifest error rule, an appellate court must find from the record that there is no reasonable basis for the trial court's finding and that the record shows the finding to be manifestly erroneous. *Stobart v. State, Dep't of Transp. and Dev.*, 617 So.2d 880, 882 (La. 1993). Where there is conflict in the testimony, a trial court's reasonable evaluations of credibility and inferences of facts should not be disturbed upon review, even if they differ from those of the appellate court. *Hallal*, 309 So.3d at 867.

On appeal, EJGH contends the trial court erroneously interpreted and decided elements two (unreasonable risk of harm) and three (actual or constructive notice) listed above.

### *Unreasonable Risk of Harm/Open and Obvious*

Whether a defect presents an unreasonable risk of harm must be determined in light of the facts and circumstances of each particular case. *Broussard v. State ex. rel Office of State Bldgs.*, 12-1238 (La. 4/5/13), 113 So.3d 175, 183-84. Courts have adopted a risk-utility balancing test to determine whether a condition is unreasonably dangerous, wherein the trier of fact balances the gravity and the risk of the harm against the individual and societal utility and the cost and feasibility of repair. *Id*. at 184; *Bufkin v. Felipe's Louisiana, LLC*, 14-288 (La. 10/15/14), 171 So.3d 851, 856. The Louisiana Supreme Court has synthesized the risk-utility balancing test to a consideration of four pertinent factors: (1) the utility of the complained-of condition; (2) the likelihood and magnitude of the harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of societal utility or whether the activities were dangerous by nature. *Id.*

We first address the second prong of the risk-utility inquiry, which focuses on whether the dangerous or defective condition is obvious and apparent. Generally, a defendant does not have a duty to protect against that which is obvious and apparent. *Broussard*, 113 So.3d at 184. In order for a hazard to be considered obvious and apparent, the hazard should be one that is open and obvious to everyone who may potentially encounter it. *Id*. If the facts of a particular case show that the condition complained of should be obvious to all, the condition may not be unreasonably dangerous, and the defendant may owe no duty to the plaintiff. *Morange v. Troxler*, 20-386 (La. App. 5 Cir. 10/27/21), 329 So.3d 1105, 1109.

An accident, alone, does not support the imposition of liability, particularly considering the normal hazards pedestrians face while traversing sidewalks. *Creager v. Marrero Land and Improvement Association Limited*, 21-322, pp. 5-6

(La. App. 5 Cir. 2/23/22), 2022 WL 533881. A pedestrian has a duty to see what should be seen and is bound to observe whether the pathway is clear. *Hutchinson v. Knights of Columbus, Council No. 5747*, 03-1533 (La. 2/20/04), 866 So.2d 228, 234. An owner is not liable for an injury which results from a condition which should have been observed by the individual in the exercise of reasonable care, or which was as obvious to a visitor as it was to the owner. *Id.*; *Handy v. City of Kenner*, 12-135 (La. App. 5 Cir. 6/28/12), 97 So.3d 539, 542.

EJGH argues that the trial court reversibly erred by finding the base of the light pole was not open and obvious, and by further imposing a nonexistent legal duty on EJGH to paint the concrete base a distinguishing color. EJGH argues that Frank Tromatore admitted at trial that he saw the light pole well before he tripped over the base, knew that the light pole would have a base which he should be wary to avoid, and further admitted that the walkway was wide enough for safe travel. EJGH contends that its expert also testified that the space for pedestrian travel exceeded any code or ordinance requirement. Finally, EJGH argues that 2,500 to 3,000 pedestrians traverse the walkway every month and it had not received any prior complaints regarding the base nor any reports of prior incidents in the past 45 years.

In their opposition, plaintiffs respond that EJGH is not arguing the trial court was manifestly erroneous, but rather that the trial court should have accepted EJGH's interpretation of the evidence. Plaintiffs contend that EJGH's arguments merely demonstrate that two permissible views of the evidence exist, and a trial court is not manifestly erroneous when it chooses one of the permissible views of the evidence. Plaintiffs further argue that extensive evidence exists to support the trial court's conclusion that the base was not open and obvious. They contend that the photographs introduced at trial indicate the concrete base is the same dark color as the surrounding sidewalk. They cite to Frank Tromatore's testimony indicating

that he was paying attention to where he was walking, but did not see the concrete base because it blended into the sidewalk. While plaintiffs' expert, Mr. Barnes, agreed that the walkway and location of the base did not violate any codes or ordinances, he also testified that the base is located within the walkway and was difficult to see because the base and surrounding walkway were black with mold. Finally, plaintiffs cite to testimony from EJGH's representative, Mr. Millet, where he agreed that it was difficult to distinguish the base from the walkway in photographs introduced into evidence. When questioned by the trial court, he agreed that the base, as well as the sidewalk leading up to the base of the light pole, were dark and dirty.

The trial court provided the following written reasons for its conclusion that the base was not open and obvious and was unreasonably dangerous:

> As shown by the photographs introduced at trial, the pedestal is four inches high and is virtually indistinguishable from the concrete walking surface surrounding the pedestal. (See P. Ex. A.) It is not painted bright yellow like the other trip hazards in and around the same walkway. Both the pedestal and the walkway are black with mold and dirt and appear to be the same color. Moreover, as shown in several of the photographs, the pedestal is often partially obstructed by shadows cast by the ambulance ramp and the light post. These photographs alone support a finding that the pedestal is not an open and obvious danger to pedestrians leaving the emergency room.

EJGH contends that this Court addressed a similar open and obvious condition in *Hallal*, *supra*. In *Hallal*, the plaintiff went to EJGH for a doctor's appointment and tripped on an uneven portion of the sidewalk with a one-and-one half height differential at the entrance of the building. The plaintiff testified that when she tripped, she was looking at a man near the entrance of the building. Following a bench trial, the trial court dismissed the plaintiff's claims against EJGH, finding that the plaintiff failed to prove that an unreasonable risk of harm existed by a preponderance of the evidence. Contrary to EJGH's argument, this Court did not conclude on appeal that the deviation in the sidewalk was open and

obvious and therefore, EJGH owed no duty. Rather, this Court agreed that the trial court did not err when it determined that the plaintiff did not prove the existence of an unreasonable risk of harm by a preponderance of the evidence and found that EJGH did not have actual or constructive notice of the defect. *Hallal*, 309 So.3d at 867. This Court further observed that while there is no bright line rule, a height differential of one-half to two inches between sidewalk sections had not been held to be present an unreasonable risk of harm. *Id.* at 867-68, *citing Casborn v. Jefferson Par. Hosp. Dist. No. 1*, 11-1020 (La. App. 5 Cir. 5/22/12), 96 So.3d 540.

EJGH also argues that the present matter is tightly aligned with our decision in *Hallal* because Frank Tromatore admitted he was aware the light pole had a base and failed to see what he should have seen. We disagree. The alleged defect at issue in the present matter is not an uneven sidewalk with a one-and-one half inch differential, but rather the four inch base of a light pole and a surrounding walkway that were both a dark color due to black mold and dirt. The plaintiff in *Hallal* admitted that she was looking at a man at the entrance of the building at the time of the fall. Frank Tromatore testified that he was paying attention to where he was walking, but did not see the base. Finally, in *Hallal*, this Court reviewed the trial court's determination of no unreasonable risk of harm under the manifest error standard, and in the present matter this Court is considering the reverse determination under the same standard.

Furthermore, as explained by our supreme court in *Broussard*, *supra*, the relevant inquiry is not whether the plaintiff was aware of the alleged defect; rather, in order to be open and obvious, the risk should be apparent to all who encounter the dangerous condition. *Id.* at 188. "The focus on whether an alleged defect is open and obvious is 'on the global knowledge of everyone who encounters the defective thing or dangerous condition, not the victim's actual or potentially

ascertainable knowledge.'" *Christiano v. S. Scrap Recycling*, 13-595 (La. App. 5 Cir. 12/27/13), 131 So.3d 1059, 1064, *quoting Broussard*, 113 So.3d at 188.

Considering the foregoing, the trial court was not manifestly erroneous in concluding that the concrete base was not an open and obvious condition to all who encounter it. The trial court considered the evidence, including the photographs and testimony, and determined that the base and surrounding walkway were not open and obvious because they were virtually indistinguishable due to their dark color caused by dirt and mold. The trial court also questioned the reliability of EJGH's testimony regarding the lack of prior incidents considering that EJGH had no record of the current incident. Even though an alternative permissible view of the evidence may exist as presented by EJGH, we find a reasonable basis for the trial court's determinations exist and therefore, cannot be manifestly erroneous.

EJGH also contends that the trial court reversibly erred in finding that plaintiffs met their burden to prove the base of the light pole was unreasonably dangerous by imposing a legal duty on EJGH to paint the base a distinguishing color. EJGH argues that in reaching this determination the trial court improperly relied on the testimony of plaintiff's expert engineer, Mr. Barnes, who stated that the base should have been painted a distinguishing color when no law, code or ordinance required the painting of the base.

We do not agree that the trial court found that the base created an unreasonable risk of harm simply because EJGH did not paint the concrete base a distinguishing color. EJGH's argument ignores the trial court's additional findings and evidence outlined above, particularly regarding other trip hazards that were marked in the walkway, as well as the mold and dirt, and shadows from the ramp and light pole that rendered the base virtually indistinguishable from the walkway. We also do not find that the trial court was manifestly erroneous by relying on the

expert testimony offered by plaintiffs. Credibility determinations are for the trier of fact, even as to the evaluation of expert witness testimony. *Green v. K-Mart Corp.*, 03-2495 (La. 5/25/04), 874 So.2d 838, 843. A fact-finder may accept or reject the opinion expressed by an expert, in whole or in part. *Id.* In addition, code compliance is merely one factor for the court to consider in determining the existence of an unreasonable risk of harm, and does not alone relieve a defendant of liability. *See Calcagno v. Kuebel, Fuchs Partnership*, 01-691 (La. App. 5 Cir. 11/14/01), 802 So.2d 746, 751.

Considering the forgoing, we do not find that the trial court was manifestly erroneous in determining the light pole base at issue in this matter represented an unreasonable risk of harm.

### Notice of Unreasonably Dangerous Condition

EJGH next argues that the trial court committed reversible legal error by placing the burden on EJGH to prove the absence of prior notice.

La. R.S. 9:2800(C) states that no person shall have a cause of action "against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so." Actual notice under La. R.S. 9:2800 has been found in cases where complaints about the injury-causing defect were received by the proper authorities. *Perdomo v. City of Kenner*, 18-156 (La. App. 5 Cir. 10/17/18), 258 So.3d 983, 992, *writ denied*, 18-1860 (La. 1/18/19), 262 So.3d 288, and 18-1861 (La. 1/18/19), 262 So.3d 895. Constructive notice, on the other hand, is defined in La. R.S. 9:2800(D) as "the existence of facts which infer actual knowledge." Constructive notice can be found if the conditions which caused the injury existed for such a period of time that those responsible, by the exercise of ordinary care and

diligence, must have known of their existence in general and could have guarded the public from injury. *Perdomo*, 258 So.3d at 992. Whether the public entity had actual or constructive notice of a potential defect is a question of fact. *Drury v. Allstate Ins. Co.*, 11-509 (La. App. 5 Cir. 12/28/11), 86 So.3d 634, 639.

Contrary to EJGH's arguments on appeal, the trial court did not shift the burden and require EJGH to prove a lack of notice. The written reasons clearly indicate that the trial court concluded EJGH had constructive notice: "With regard to knowledge, the evidence supports a finding that defendants *should have known* of the unreasonably dangerous condition." [Emphasis added]. The trial court went on to discuss that EJGH's defense was that it had no prior complaints of similar falls. However, the trial court questioned the reliability of this defense because EJGH did not have an accident report or record despite testimony and hospital records indicating that plaintiffs reported the fall to a nurse in the emergency room. This analysis conducted by the trial court does not indicate a shift of the burden to EJGH, but rather questioned the reliability of EJGH's system for tracking prior incidents. Further, in *Broussard*, 113 So.3d at 188, the Louisiana Supreme Court recognized that the absence of prior reported injuries is not a bar to recovery.

The four-inch base has existed at EJGH for at least 45 years. EJGH's representative, Mr. Millet, testified that EJGH employees patrol the walkway on a daily and even, hourly basis. The focus of the trial court's conclusion with respect to its determination that an unreasonable risk of harm existed is the dark color of the base and surrounding walkway due to the accumulation of mold and dirt based on the various photographs introduced by the parties. The accumulation demonstrated in the photos indicates that the condition existed for a sufficient period of time that it should have been discovered and remedied either by cleaning the area or painting the base a distinguishing color. The trial court further observed that EJGH painted other tripping hazards in the walkway a distinguishing

yellow color without notice of prior incidents. Considering this evidence and the entire record on appeal, we do not find manifest error in the trial court's finding that EJGH had constructive notice of the unreasonable risk of harm created by the concrete base.

*Comparative Fault*

In its final assignment of error, EJGH argues, alternatively, that the trial court erred by failing to assign any comparative fault to Frank Tromatore. EJGH argues that Mr. Tromatore should have seen the base of the light pole and failed to do so based on his admission that he was tired and upset from the emotional experience of spending the prior 12 hours with his wife in the intensive care unit. EJGH contends that these extenuating circumstances played a pivotal role in Mr. Tromatore traversing the walkway without exercising proper care. Plaintiffs argue in response that Mr. Tromatore testified that at the time he fell, he was looking forward and paying proper attention. Plaintiffs further argue that the evidence established that the base was difficult to see.

A trier of fact's findings as to comparative fault are factual, and in the absence of clear or manifest error, must be upheld on appeal. *Woods v. Winn-Dixie Montgomery, L.L.C.*, 17-707 (La. App. 5 Cir. 6/27/18), 251 So.3d 675, 683. Based on Mr. Tromatore's testimony that he was looking forward and paying attention at the time he fell, as well as the evidence establishing that the base was difficult to distinguish from the surrounding concrete, we find no manifest error in the trial court's decision to find EJGH solely at fault for the accident.

We next address plaintiffs' assignments of error on appeal.[3] In their answer to the appeal, plaintiffs seek modification of the trial court's judgment by

---

[3] EJGH argues in its reply brief that plaintiffs abandoned the issues raised in their answer to the appeal because plaintiffs failed to brief these issues in their appellate brief. Plaintiffs provided extensive briefing regarding the issues they intended to raise in their answer to the appeal and adopted this extensive briefing in their appellate brief. Accordingly, we do not find that plaintiffs abandoned their appeal to modify the damages awarded by the trial court.

increasing the general damages awarded to Frank Tromatore from $200,000.00 to $400,000.00; increasing the $5,000.00 in damages awarded to Frank Tromatore on behalf of his wife for loss of consortium to $15,000.00; and awarding bystander damages to Chris Tromatore in the amount of $7,500.00.

### *General Damages*

The trial judge has much discretion in fixing general damage awards, which are damages which may not be fixed with pecuniary exactitude. *Theriot v. Allstate Ins. Co.*, 625 So.2d 1337, 1340 (La. 1993); *Jackson v. Drachenburg*, 19-345 (La. App. 5 Cir. 1/8/20), 288 So.3d 289, 293. This Court reviews general damage awards under an abuse of discretion standard. *Id.* In reviewing a general damages award, the appellate court must consider the particular facts of the plaintiff's injuries, and the effects of those injuries on the particular plaintiff. *Id.* An appellate court may not overturn an award for general damages unless it is so out of proportion to the injury that it shocks the conscience. *Id.* Consequently, this Court should rarely disturb an award of general damages. *Id.* Only after the appellate court has determined that the trier of fact abused its discretion is a resort to prior awards appropriate; the prior awards may be referred to only for the purpose of determining the highest or lowest point, which is reasonably within that discretion. *Id.*

Plaintiffs contend that the trial court's award of $200,000.00 for general damages to Frank Tromatore is abusively low. They argue that Mr. Tromatore suffered a displaced comminuted (broken in several cases) three-part proximal humerus fracture of his left shoulder. Following his evaluation in the emergency room, Mr. Tromatore's shoulder was in a sling and he was prescribed Vicodin for pain. Several days later, Mr. Tromatore underwent an open reduction internal fixation surgery performed by orthopedist, Dr. William Junius. He then began eight months of physical therapy. Plaintiffs argue that prior to his fall, Mr.

Tromatore, now 77 years old, had no pain or problems in his shoulder. Mr. Tromatore testified that he now suffers from pain in his shoulder depending on how he uses his arm and has some difficulties lifting and grabbing things with his left shoulder. However, he testified that he is not taking any medications and does not suffer from constant pain. He explained that the pain depends on how he uses his arm.

Considering the particular facts of Mr. Tromatore's injury and the effects of the injury he described at trial, as well as the trial court's vast discretion, we do not find that the trial court abused its discretion in awarding $200,000 in general damages. We will not disturb the trial court's award.

### Loss of Consortium

Plaintiffs next argue that the trial court abused its discretion by awarding only $5,000.00 for the loss of consortium claim brought on behalf of Frank Tromatore's wife. In granting the award, the trial court recognized that prior to his injury, Frank Tromatore visited his wife daily at the nursing home where she resided. For several months after the injury, he was unable to visit his wife and after he recovered, he was still unable to visit her every day. His wife passed away one month after he completed physical therapy. Mr. Tromatore contends that the award should be increased to $15,000.00 because his wife relied on him for his help, support and affection. EJGH argues that the trial court's award is not out of proportion to damages awarded in prior, similar cases.

An award for loss of consortium damages is reviewed under an abuse of discretion standard. *Baack v. McIntosh*, 20-1054, p. 14 (La. 6/30/21), 2021 WL 2679825. After reviewing the record and arguments of the parties, we do not find that the trial court abused its discretion with respect to the amount of damages awarded for the loss of consortium experienced by Mr. Tromatore's wife prior to her death.

*Bystander Damages*

Finally, Chris Tromatore argues that the trial court erred by denying his claim for bystander damages pursuant to La. C.C. art. 2315.6. This article provides that certain individuals, including a child, can recover for severe, debilitating and foreseeable mental anguish or emotional distress suffered as a result of viewing an event causing injury to another:

> B. To recover for mental anguish or emotional distress under this Article, the injured person must suffer such harm that one can reasonably expect a person in the claimant's position to suffer serious mental anguish or emotional distress from the experience, ***and the claimant's mental anguish or emotional distress must be severe, debilitating, and foreseeable.*** Damages suffered as a result of mental anguish or emotional distress for injury to another shall be recovered only in accordance with this Article. [Emphasis added].

While recognizing that his father's accident was upsetting, the trial court denied Chris Tromatore's claim for bystander damages because it did not find that his emotional distress was severe, debilitating and foreseeable. Chris Tromatore contends that the trial court erred by denying his claim because he was in shock as a result of viewing his father's accident and he has re-lived the experience in his mind. EJGH argues that the trial court correctly denied the claim because Chris Tromatore did not seek any medical treatment for his alleged mental anguish and worked at EJGH for a year after the accident as a respiratory therapist.

We do not find evidence of severe, debilitating and foreseeable mental anguish or emotional distress suffered by Chris Tromatore in the record. Accordingly, the trial court was not manifestly erroneous by finding in favor of EJGH and dismissing Chris Tromatore's claim for bystander damages.

## DECREE

For the foregoing reasons, we affirm the trial court's May 19, 2021 judgment.

**<u>AFFIRMED</u>**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
INTERIM CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **MAY 26, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 21-CA-551

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE ELLEN SHIRER KOVACH (DISTRICT JUDGE)
MATTHEW A. MANG (APPELLEE)      MATTHEW A. SHERMAN (APPELLANT)      WALTER R. WOODRUFF, JR.
RAYMOND R. EGAN, III (APPELLANT)                                    (APPELLANT)

### MAILED

VICTORIA H. FABRE (APPELLEE)        CLARK G. WARDEN (APPELLANT)
ATTORNEY AT LAW                     NICHOLAS R. VARISCO (APPELLANT)
400 POYDRAS STREET                  ATTORNEYS AT LAW
SUITE 2300                          ONE GALLERIA BOULEVARD
NEW ORLEANS, LA 70130               SUITE 1100
                                    METAIRIE, LA 70001