719 So.2d 1043 (1998)
Belinda HEBERT, et al.
v.
BROWN BOTTLING GROUP, INC., et al.
No. 98-C-0924.
Supreme Court of Louisiana.
October 30, 1998.
*1044 Meredith Margaret Miceli, New Orleans, Tobin James Eason, Mandeville, for Applicant.
Jack Derrick Miller, Crowley, for Respondent.
PER CURIAM.[*]
We granted certiorari in this case primarily to determine whether the court of appeal erred in reversing the trial court's allocation of fault. After a review of the record, we find that the court of appeal did so err. The trial court's finding is not clearly wrong. We therefore reinstate that finding.

FACTS AND PROCEDURAL HISTORY
This case arises from an accident which occurred on June 29, 1992, at the Shop Rite convenience store in Crowley, Louisiana. The record indicates that on the morning of the incident, Brown Bottling Group, Inc. ("Brown Bottling") sent one of its employees, Payton Black, to the store to change and rearrange plastic shelving known as "cool glides"[1] located in the store's refrigerated coolers. Mr. Black arrived at approximately 8:30 a.m. and worked for several hours, removing the old cool glides, setting them aside, and replacing them with cool glides he brought in from his truck. As he removed the old cool glides, he stepped outside the cooler and stacked them against a shelf in the third aisle of the store. Although Brown Bottling's usual policy was to perform this work inside the cooler, Mr. Black found it more convenient not to do so on this occasion because the Shop Rite cooler was small and he did not want to trip over the cool glides. After a few hours of work, Mr. Black had about twenty cool glides stacked together, and the stack, which was tilted at an angle against a shelf so as not to fall, extended six or seven inches into the third aisle of the store. A store clerk, Penny Mire, was present during this time, but she gave Mr. Black no instructions concerning his work with the cool glides.[2]
At approximately 10:45 a.m., plaintiff, Belinda Hebert, entered the store. While walking *1045 near the coolers in the rear of the store, she felt something fall against the back of her leg, causing her to fall to the floor.[3] Timothy Wilder, an eyewitness to the incident, indicated the stack of cool glides "just slid out" as Mrs. Hebert proceeded down the third aisle of the store, although "she hadn't touched them at all."
After the fall, Mrs. Hebert complained of pain in her leg and of being embarrassed by the incident. Mr. Wilder walked with Mrs. Hebert toward the front of the store, and Penny Mire completed an accident report. Mrs. Hebert then made a purchase and left the store.
Later that day, Mrs. Hebert saw her family physician, Dr. Ronald Menard, about her injuries. Dr. Menard initially opined that Mrs. Hebert's hip, back and leg were bruised. He performed X-rays, which were negative, prescribed pain medication, and released Mrs. Hebert to return home. For the next several months, Mrs. Hebert continued to treat with Dr. Menard, complaining about headaches and pain in her neck. She was later seen by an orthopedic surgeon for neck and shoulder pain and sought relief from several dentists for TMJ disorder.
Subsequently, Mrs. Hebert, joined by her husband and two children, filed suit against Shop Rite, Inc. ("Shop Rite"), the owner of the convenience store, its liability insurer, Alliance General Insurance Company ("Alliance"), and Brown Bottling and its liability insurer. Plaintiffs settled with Brown Bottling and its insurer prior to trial. The case then proceeded to a bench trial against Shop Rite and Alliance.
After trial, the trial court rendered judgment allocating eighty percent of the fault to Brown Bottling and the remaining twenty percent to Shop Rite. The court awarded $55,000 to Mrs. Hebert in general damages, $5,000 to her husband as consortium damages, $2,500 to each of the couple's two children as consortium damages, and $31,304.71 in past medical expenses. Because plaintiffs had settled with Brown Bottling and its insurer prior to trial, the trial court's written judgment limited plaintiffs' recovery against Shop Rite and Alliance to twenty percent of the total damage award. The judgment assessed all court costs, including expert witness fees and deposition costs, in the same proportion as fault.
Plaintiffs appealed from this judgment. In an opinion not designated for publication, the court of appeal reversed the trial court's allocation of fault and found Brown Bottling and Shop Rite equally at fault.[4] The court of appeal also reversed the trial court's assessment of costs and taxed all costs in the lower court to Shop Rite and Alliance. The court of appeal amended the judgment to reflect that Shop Rite and Alliance were solidarily liable for the judgment rendered against them. The court of appeal affirmed the judgment of the trial court in all other respects.
Upon application by Shop Rite and Alliance, we granted certiorari to consider the correctness of this ruling.[5] The main issue presented for our consideration is whether the court of appeal erred in reversing the trial court's allocation of fault.[6]

DISCUSSION
In Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993), we explained the standard of review the appellate courts must apply when reviewing the trial court's findings of fact:
A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840 (La.1989). This court has announced *1046 a two-part test for the reversal of a factfinder's determinations:
1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
See Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).
This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's finding. Id. The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous.
Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. See generally, Cosse v. Allen-Bradley Co., 601 So.2d 1349, 1351 (La.1992); Housley v. Cerise, 579 So.2d 973 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. ESCO, 549 So.2d 840 (La. 1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The appellate court may only reallocate fault if it finds the trial court was clearly wrong or manifestly erroneous in its allocation of fault, even if the court of appeal would have decided differently had it been the original trier of fact. Clement v. Frey, 95-1119, 95-1163 (La.1/16/96), 666 So.2d 607. With these precepts in mind, we now turn to a review of the record to determine if the trial court's findings of fact and allocation of fault were reasonable in light of the evidence in the record.
The testimony of Brown Bottling's employee, Payton Black, establishes that decisions regarding the rearranging of the cool glides were made by him and his company, not by the store. Mr. Black testified he was experienced with regard to the installation of the cool glides, and received no instructions or suggestions from the store manager regarding the installation. He admitted he could have stacked the cool glides in the rear of the cooler (which would have kept them out of the area where customers walked), but instead decided to stack them outside the cooler so he would not have to walk over them.
Ms. Mire, the store clerk, testified she was not able to see the rear of the aisle where the cool glides were being stacked, but did not feel a necessity to check on Mr. Black or any of the other third party employees who performed jobs in her store. She assumed Mr. Black was stacking the cool glides in the rear of the cooler, as had been done previously, and stated that if she had seen the cool glides in the aisle, she would have had them moved.
The testimony of Mr. Black and Ms. Mire supports the trial court's conclusion that the majority of the fault for the accident should rest with Brown Bottling. As Mr. Black's testimony established, Brown Bottling, not Shop Rite, had control over the rearranging of the cool glides. The decision to place the cool glides in the store aisle, which ultimately resulted in the accident, was made solely by Mr. Black. While Shop Rite's clerk may have had some responsibility to determine that Mr. Black was performing his task in a safe manner, any negligence by the store is slight in comparison to the negligence of Brown Bottling.[7] Accordingly, we find the trial court's allocation of eighty percent of the fault to Brown Bottling and twenty percent to Shop Rite is supported by the record.
The trial court also assessed court costs in the same percentage as fault, eighty percent to Brown Bottling and twenty percent to Shop Rite. Technically, the trial court *1047 erred in assessing costs against Brown Bottling, as it was not a party to the suit at the time the judgment was rendered.[8] Nonetheless, we find the intent of the trial court was to assess costs between the defendants in their respective percentages of fault. Since plaintiffs settled with Brown Bottling prior to trial, it follows that plaintiffs will absorb the eighty percent of the court costs assessed to Brown Bottling, and the recoverable costs against Shop Rite will be limited to twenty percent.

CONCLUSION
Based on our review of the record, we conclude the court of appeal erred in reversing the trial court's ruling with respect to allocation of fault and assessment of costs. Accordingly, this portion of the court of appeal's opinion must be reversed.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed insofar as it reverses the trial court's allocation of fault and assessment of costs. The judgment of the trial court allocating fault in the amount of eighty percent to Brown Bottling Group, Inc. and twenty percent to Shop Rite, Inc. is reinstated. The judgment of the trial court assessing costs in the amount of twenty percent against Shop Rite, Inc. is reinstated. In all other respects, the judgment of the court of appeal is affirmed. All costs in this court are assessed against plaintiffs.
NOTES
[*] Calogero, C.J. not on panel. Rule IV, Part II, § 3.
[1] A "cool glide" is a lightweight plastic shelf used for storing soft drinks in the refrigerated coolers of a convenience store.
[2] The Shop Rite store is configured in a fashion typical of convenience stores, with a cash register and deli near the door, three aisles running the length of the store, and several self-serve refrigerated coolers at the far end.
[3] Mrs. Hebert was holding her nineteen month old daughter in her arms at the time of the fall, but there is no allegation that the child was physically injured in the fall.
[4] 97-0760 (La.App. 3d Cir.3/6/98), 709 So.2d 1104.
[5] 98-0924 (La.5/15/98), 719 So.2d 59.
[6] Shop Rite and Alliance only assign as error that portion of the court of appeal's judgment reallocating fault and reassessing costs. They do not contest that portion of the court of appeal's judgment affirming the damage award or amending the judgment to reflect that Shop Rite and Alliance are solidarily liable.
[7] Because Shop Rite did not appeal the trial court's judgment assessing it with twenty percent of the fault, we pretermit the question of whether plaintiff met her burden of proof under White v. Wal-Mart Stores, Inc., 97-0393 (La.9/9/97), 699 So.2d 1081.
[8] La.Code Civ. P. art.1920, providing for the assessment of costs, refers to the assessment of costs against a "party" to the suit:

Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.
Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable. [Emphasis added].