Judgment rendered January 11, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,827-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

TIMOTHY H. MULLENIX, ET AL.    Plaintiffs-Appellants

versus

GEORGE R. MULLENIX, ET AL.    Defendants-Appellees

* * * * *

Appealed from the
Thirty-Seventh Judicial District Court for the
Parish of Caldwell, Louisiana
Trial Court No. 29940

Honorable Ashley P. Thomas, Judge

* * * * *

| | |
|---|---|
| MIXON, CARROLL, FRAZIER & McILWAIN, LLC<br>By: James E. Mixon | Counsel for Appellants, George Raymond Mullenix, Shirley Garner Mullenix, and Kristina Michelle Mullenix Ballard |
| BECKER & HEBERT, LLC<br>By: Daniel J. Gauthier | Counsel for Appellees, Timothy Hershel Mullenix, Patricia Vestal Mullenix, Kevin Hershel Mullenix, Timothy Glynn Mullenix, and Chasity Lynne Mullenix Mercer |

* * * * *

Before STEPHENS, THOMPSON, and ROBINSON, JJ.

**STEPHENS, J.**

This appeal involves a dispute between two brothers over access rights to property that was partitioned in an act of exchange by the brothers in 1969. As a result of this conveyance, one brother received property that was entirely landlocked, with no access to a public road. The other brother does not dispute that he has an obligation to provide gratuitous access across his property to the landlocked brother, but because they could not agree on the location for this access point, they were unable to resolve their dilemma extrajudicially.[1] The landlocked brother has appealed from the trial court's judgment which, *inter alia*, set the point of access. For the reasons set forth below, the judgment of the trial court is amended in part, and as amended, affirmed.

## FACTS/PROCEDURAL BACKGROUND

Plaintiff, Timothy Mullenix, et al. (referred to collectively as "Tim"), filed suit seeking a declaratory judgment to formally fix the right of access his property owes the property of his brother, defendant George Mullenix, et al. (referred to collectively as "George"), at the "Northern Access Point," which is described as "directly off of La. Hwy. 848 and proceeding east through a gate at [George's] property line." The route George claims to have used "at all times" to access his property is a route Tim refers to as the "Southern Access Point," described as "off of La. Hwy. 848 onto and down Lynne Road, then onto [Tim's] private limestone driveway, then across [Tim's] grass front lawn until reaching gate at [George's] property line." A

---

[1] In matters such as this, perhaps family members should keep in mind that when the legal arena actually becomes the "court" of last resort, attorney fees and costs to resolve a dispute can easily exceed the amount to address the underlying problem itself.

map diagram of the Northern Access Point and Southern Access Point was attached to Tim's petition as Exhibit "B." Tim also asked the court to declare null and void "Rights of Ingress and Egress" to George's property via the Southern Access Point since no such rights have ever been fixed or established in favor of George, and that any future improvements to the Northern Access Point be made by George, as dominant estate, pursuant to law.

George filed an answer and reconventional demand, urging that at the time of the 1969 partition, a historical access route existed along the southern part of the property, the "Southern Access Point," and that George has never used the "Northern Access Point," which is a substandard route that Tim is trying to "trade" for the access route historically utilized. In his pleading, George alleged that he has only accessed his property by the Southern Access Point since the date of the exchange in 1969 except for three occasions to accommodate Tim when he built both his home and garage and when he planted a garden. George sought a judgment that the Southern Access Point be declared the exclusive ingress and egress route. Alternatively, should the court designate an alternative passage, then George urges that all costs of improvement should be borne by Tim and that this replacement access route should be sufficient to permit "all-weather access" to George's property by automobile.

A hearing was held on December 10, 2021. The trial court rendered its judgment on March 3, 2022, granting the petition for declaratory judgment filed by Tim and denying the relief requested by George. Specifically, the court found that:

1. No access route to the property received by George was fixed across the property received by Timothy **at the time of the partition** between Timothy and George. (emphasis added).
2. **The tract received by George** as a result of the partition between George and Timothy **is an enclosed estate**. As such, **George is entitled to a gratuitous access route** across the tract received by Timothy. (emphasis added).
3. The access route is fixed as shown on a plat attached to the trial court's judgment; it is the "Northern Access Route" proposed by Timothy.
4. Timothy is to place a culvert at the intersection of the route and La. Hwy. 848, if a culvert is required by the State to access the route fixed in the judgment, with the cost of placing the culvert to be shared equally between Timothy and George.
5. All future improvements to and maintenance of the access route (other than the cost of the culvert) are to be borne by George, his successors or assigns.
6. Each party is to bear his own costs.

It is from this judgment that George has appealed.

## DISCUSSION

*Applicable Legal Principles*

In all civil cases, the appropriate standard for appellate review of factual determinations is the manifest error-clearly wrong standard, which precludes the setting aside of a trial court's finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety. *Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC*, 14-2592, p. 8 (La. 12/8/15), 193 So. 3d 1110, 1115, citing *Cenac v. Public Access Water Rights Ass'n,* 02-2660, p. 9 (La. 6/27/03), 851 So. 2d 1006, 1023. This includes findings of facts pertaining to servitudes of passage. *See, Phillips Energy Partners, LLC v. Milton Crow Ltd. Partnership*, 49,791 (La. App. 2 Cir. 5/20/15), 166 So. 3d 428, *writ denied*, 15-1396 (La. 10/2/15), 186 So. 3d 1148.

The issue to be resolved on review is not whether the judge or jury was right or wrong, but whether the judge's or jury's factfinding conclusion

3

was a reasonable one. *Hayes Fund, supra; Rosell v. ESCO,* 549 So. 2d 840, 844 (La.1989); *Canter v. Koehring Co.,* 283 So. 2d 716, 724 (La.1973). Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. *Rosell,* 549 So. 2d at 844.

A predial servitude is a charge on a servient estate for the benefit of a dominant estate. La. C.C. art. 646. A right of passage is one example of a predial servitude. *See*, La. C.C. art. 699. The servitude of passage is the right for the benefit of the dominant estate whereby persons, animals, utilities, or vehicles are permitted to pass through the servient estate. La. C.C. art. 705. The extent of the right and the mode of its exercise shall be suitable for the kind of traffic or utility necessary for the reasonable use of the dominant estate. *Id.*

Louisiana Civil Code article 694 provides:

When in the case of partition, or of voluntary alienation of an estate or of a part thereof, property alienated or partitioned becomes enclosed, passage shall be furnished gratuitously by the owner of the land on which the right of passage was previously exercised, even if it is not the shortest route to the public road, and even if the act of alienation does not mention the servitude of passage.

La. C.C.P. art. 694 is mandatory—parties may not derogate from its provision when land becomes enclosed as a result of a voluntary alienation, such as a sale, exchange, donation, subdivision or any other transaction that involves a transfer of ownership. *Spruell v. Dudley*, 03-2697, p. 6 (La. App. 1 Cir. 10/29/04), 897 So. 2d 144, 149; A.N. Yiannopoulos, *Predial Servitudes*, §5.22, in 4 *Louisiana Civil Law Treatise* (4th ed. 2013).

A right of way created in favor of lands alienated or partitioned voluntarily under La. C.C. art. 694 is a conventional servitude. *Brown v.*

4

*Terry*, 103 So. 2d 541 (La. App. 1 Cir. 1958); Yiannopoulos, *supra*, §5:21. Article 694 imposes a legal obligation on transferors of land to provide a gratuitous passage to transferees for access to a public road, the obligation being founded on the implied intent of the parties to an agreement, be it a partition, sale, or other alienation that lands partitioned or transferred should not be without access to a public road. *Id*. The demand of a right of passage under La. C.C. art. 694 is the enforcement of a legal obligation for the creation of a conventional servitude of passage. The claim for the gratuitous passage is the enforcement of a legal obligation, and the fixing of the right of way creates a conventional servitude of passage. *Id.*

*Analysis*

**(1) Whether the trial court erred in finding that there was no fixed access route across the property received by Timothy at the time of the parties' partition.**

The trial court found, and Tim and George do not dispute that, as a result of the brothers' partition by exchange in 1969, the property received by George ***became landlocked as a result of the partition***. By law, therefore, La C.C. art. 694 is applicable. Article 694 provides:

> When in the case of partition, or a voluntary alienation of an estate or a part thereof, property alienated or partitioned becomes enclosed, passage shall be furnished gratuitously by the owner of the land on which the passage was previously exercised, even if it is not the shortest route to the public road or utility, and even if the act of alienation or partition does not mention a servitude of passage.

*George's Argument*

George, however, in his first assignment of error, contends that the trial court erred in finding that there was no fixed access route across the property received by Tim at the time of the parties' partition. According to George, the law does not require that there be a formal writing identifying

5

the historical access route in order for the court to fix this route. In *Fuller v. Wright*, 464 So. 2d 350 (La. App. 2 Cir. 1985), *writ denied*, 465 So. 2d 737 (La. 1985), the Second Circuit noted that there is no need for an act of partition to identify the location of a historical route in the act. Instead, the only requirement to enforce such a right is that the right of passage be a previously used or exercised one. George contends that there is "no dispute" as to where the historical access route was located at the time of the brothers' partition, urging that this same route has been used without interruption since 1982 (except for when it was moved to the west by George on two occasions to accommodate changes made by Tim on his property).

George asserts that there is no requirement that the access be fixed in the partition, but only that there be evidence as to where the passage was at the time of the partition. The record contains evidence of the existing gravel road that ran from Hwy. 848 to the old home site on the tract received by George that he used to access the enclosed property. While George has permitted the route to be moved two times to accommodate Tim, George urges that he has never abandoned this access route.

### Tim's Argument

Contrary to George's first assignment of error, at the conclusion of the trial, the court was clear that this case turned on the issue of whether any right of passage had ever been "fixed." If he found that such a passage ***had not been fixed***, then "[t]he owner of the enclosed estate may not demand the right anywhere he chooses" and the court would "evaluate and determine that the location [to be fixed] shall not affect the safety of the operations or significantly interfere with the operations of the owner of the servient

6

estate," in accordance with La. C.C. art. 692.

Tim points out that, at trial, George stipulated that none of the documents in the chain of title refer to a right-of-way. George's testimony establishes that, at the time of the signing of the 1969 partition, the tract he received was an enclosed estate with "no road to the highway." Tim's testimony was that no verbal or written understanding or agreement between the parties as to a specific location or extent of a right of passage giving access to George's property had ever been reached. Additionally, the trial court found, based on trial testimony from George and previous tenants, that they have utilized multiple passages over and across Tim's land that have changed/moved a number of occasions, including the Northern Access Point and Southern Access Point. Specifically, Roger Wheeler stated that George expressly instructed him to use the Northern Access Point as the exclusive way to access George's tract as no other access was available. Mr. Wheeler, a previous tenant, also testified to witnessing George use this access point to get to his property. George himself admitted at trial to using the Northern Access Point and could not estimate how many times.

Regarding the current gate location at the Southern Access Point, George admitted that it was installed by him less than two years ago without Tim's permission or approval. Testimony established that before the gate's current location, there was another gate a few hundred feet to the east, closer to the Boeuf River, by which George crossed Tim's property along a different route that George claimed allowed access to an "old house place" on the property acquired by George in 1969 that was destroyed in the 1927 flood. As for the "old house place" on the property, George's wife Shirley

7

couldn't identify where it was located, and Tim testified that "nobody went to that house place … it's never been a road there."

Tim notes that the location of this "historical access route" as relocated, contrary to what George claims, does not appear on the survey attached as an exhibit to the trial court's judgment. Instead, what the survey shows is a "gravel drive" that ends a good distance from the southern boundary of George's property—and there is no other document or evidence in this record to show the precise location of any historical or traditional access route. The trial court noted this exact point in its determination that no defined route had ever been fixed by the parties. Specifically, the court found:

- "Missing from the testimony in this case is a defined route across TIM'S yard off of Lynn Road….a path that has been moved several times and cannot be described or defined with any certainty."
- "This route across the grass has never been fixed and has changed over the years. The Court can only find that the traditional access route extends to the mailbox area in TIM'S driveway. This path does not reach the enclosed property."
- "Here the Court cannot determine where the traditional access is located, and even if it were able to determine the location, the extent of the servitude is unclear."

According to Tim, George was asking the trial court to define and fix a precise location, scope and width of a passage that did not exist, and that is what he is asking this Court to do on appeal. This Court cannot arbitrarily declare the precise location and width of a passage that cannot be identified or described in any detail from the record (or even by George himself).

The testimony at trial only reinforced that the location and extent of the Southern Access Point could not be defined or identified, as it had unilaterally changed several times, as recently as within the last two years. On the other hand, Tim has had surveyed and clearly delineated the Northern

8

Access Point previously used by George and tenants as a point of ingress and egress to George's property.

The following is excerpted from the trial court's well-written reasons for judgment:

> [T]he testimony of TIM and GEORGE established that access had historically been located near the southern access point in the past, but the exact location was not defined by either, in fact, it was disputed. The only fact proven in Court was that access had been in the area that now encompasses TIM's yard over many years and at a northern access point at times following partition. The southern access route is not apparent beyond the driveway that leads to TIM's carport. It is not capable of description with any specificity or definition past the end of the driveway. It does not have exterior signs or constructions, such as a roadway does, which is evidenced by the fact that all parties have testified that it has been moved over the years by simply circumventing the obstacles place[d] at the location by TIM over the years[.]
>
> It is clear that the traditional access referred to by GEORGE at the very least consisted of a route along the Lynne Road and a now blacktop driveway that ends at TIM's house, formerly GEORGE's house. It is also clear to the Court that the route that has been used by GEORGE in the past to access the pasture that is now enclosed is not a defined road or route[.] Essentially TIM testified that he has not stopped GEORGE from entering his property at any place on his land, but that they never agreed to a specific location for a gratuitous passage. There was never a written document nor evidence of a verbal agreement (notwithstanding GEORGE's testimony that TIM promised him the access, which contradicts TIM's testimony), and no judicial determination as to the location of a servitude.
>
> Here the Court cannot determine where the traditional access is located, and even if it were able to determine the location, the extent of the servitude is unclear. There has been only one defined route offered to the Court that would provide access to the enclosed property, the proposed and surveyed route. GEORGE presented no evidence that the proposed route to the north would prohibit him from accessing his property other than his testimony that he had to drive a side by side to get down the proposed route[.] It is clear from the testimony, that any traffic to the southern access point would require use of TIM's driveway and his front lawn. The northern access would definitely be more convenient for TIM and it would provide GEORGE with the same facility as the southern access with some modification.

9

We find no error in the trial court's factual determination that the brothers had never fixed an access route or right of passage. The trial court considered the testimony presented by both parties and made its decision based not just upon credibility determinations, but upon evidence that the route proposed by Tim would be more convenient for him as the owner of the servient estate yet also allow George to access his property, with some modifications, with the same ability as the previous route to the south.

**(2) Whether the trial court erred in fixing the access route as the "Northern Access Route" proposed by Timothy; according to George, there was no "just cause" for relocation of the "traditional access route and whether the trial court erred in failing to require Timothy to pay all costs for "improving" the replacement access route.**

### George's Argument

Based on our agreement with the trial court's initial finding that there was no fixed route across the property at the time of the parties' partition, we find no merit in George's claim that the trial court erred in "relocating" the traditional or fixed access route. However, George has other complaints about the selected access route, such as that it has not been improved other than being bush-hogged, will not give him the same access he had with the southern access route, and will require him to build a "useable" road across the proposed access route. George concedes that the trial court recognized that the northern access route requires the installation of a culvert, but George takes issue with the fact that the trial court has ordered that he split the costs of this culvert with Tim, who should be paying for all of the costs to install it.

### Tim's Argument

According to Tim, the trial court's factual findings are supported by the record and as such, cannot be overturned by this Court. These findings

include that "the northern access … would provide George with the same facility as the southern access with some modification," and that this point was accessible "in a vehicle with street tires in two-wheel drive." Tim emphasizes that the difference was the southern access point requires one to drive through his grass front lawn to get to George's property.

There is merit to George's argument that the trial court erred in failing to require Tim to pay **all costs** associated with the access route set by the court. In its judgment, *inter alia*, the trial court ordered that the two brothers were to bear equally the costs of installing a culvert, if required by the State, to allow George access to his property in accordance with the **gratuitous access** Tim must provide to George, as owner of the landlocked estate. ***This access, albeit under La. C.C. art. 690, which provides for a right of passage suitable for the kind of traffic or utility reasonably necessary for the use of that estate, is nonetheless in accordance with La. C.C. art. 694, since the gratuitous passage is owed because George's estate was enclosed as a result of the partition/exchange executed by the brothers in 1969***.

The trial court erred in assessing the costs of this culvert to both George and Tim, and in failing to assess the cost for extending the proposed route five feet on both sides of the surveyed route to allow for a minimum of 30 feet across for access (which the trial court specifically found was also needed to allow George to drive onto his enclosed property from Hwy. 848 just as he was able to drive off of the end of Tim's driveway and Lynne Road in the past. Thus, that cost is ***not*** a future improvement, but is an expense to be borne by Tim as owner of the servient estate) since ***all costs associated with this gratuitous access route are to be borne by the owner of the servient estate***. It is only ***thereafter,*** in the future, that costs reasonably

11

necessary for the exercise of the servitude, if desired by the owner of the enclosed estate, will be at his expense in accordance with the law.

**(3) Whether the trial court erred in failing to asses all costs of these proceedings against Tim.**

Lastly, George takes issue with the trial court's determination that each party was to bear his own costs. As this was a request by Tim to move the traditional access route to a replacement route (which we have already agreed with the trial court that it was not), George suggests that Tim should bear all costs of the proceedings.

Louisiana Code of Civil Procedure art. 1920 provides in part that, except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable. *Hebert v. Brown Bottling Group, Inc.*, 98-0924 (La. 10/30/98), 719 So. 2d 1043. The allocation of court costs among the parties is a matter which is subject to the discretion of the trial court and its allocation of those costs will not be disturbed absent evidence of an abuse of that discretion. *Jackson v. Herring*, 48,019 (La. App. 2 Cir. 5/22/13), 114 So. 3d 1245, *writ denied*, 13-1452 (La. 9/27/13), 123 So. 3d 727; *Shreveport Electric Co., Inc. v. Oasis Pool Service, Inc.*, 38,776 (La. App. 2 Cir. 9/29/04), 889 So. 2d 274, *writ denied*, 05-0340 (La. 4/1/05), 897 So. 2d 613; *Street v. May*, 35,589 (La. App. 2 Cir. 12/5/01), 803 So. 2d 312. Having found no abuse of the trial court's discretion in this case, we find no merit to this assignment of error.

**CONCLUSION**

For the reasons set forth above, the judgment of the trial court is amended in part, and, as amended, affirmed. Costs of these proceedings, including this appeal, are to be split equally between the parties.

12

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that Timothy H. Mullenix, et al., at his cost, is to place a culvert at the intersection of the route fixed herein and La. Hwy. 848, and extend the proposed route five (5) feet on both sides of the surveyed path, to allow for a minimum of thirty (30) feet for access.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that, other than the costs described herein, all future improvements to and maintenance of the access route fixed as shown on the plat attached to the judgment shall be borne by George R. Mullenix, et al., their successors, or assigns.

**AMENDED IN PART, AND, AS AMENDED, AFFIRMED.**